UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re: ) | |
| ) | |
| THOMAS R. BATEMAN ) | CHAPTER 7 |
| KATHERINE E. BATEMAN ) | CASE NO. 17-11217-FJB |
| Debtors. ) | |
| ) | |
| JOSEPH G. BUTLER, ) | |
| CHAPTER 7 TRUSTEE, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ADVERSARY PROCEEDING |
| ) | NO. |
| ROBERT E. BATEMAN, ) | |
| LESLIE A. BATEMAN AND ) | |
| TOWN OF SEBAGO, MAINE ) | |
| Defendants. ) | |
| ) | |

**VERIFIED COMPLAINT TO AVOID AND RECOVER
FRAUDULENT TRANSFER AND FOR INJUNCTIVE RELIEF**

Joseph G. Butler, the duly appointed trustee (the "Trustee") of the above-captioned Chapter 7 estate of Thomas R. Bateman and Katherine E. Bateman (the "Debtors"), pursuant to 11 U.S.C. §§ 548, 544, and 550 and M.G.L. c. 109A, §1, et. Seq. (Massachusetts Fraudulent transfer statute) and/or 14 M.R.S.A. §3571, et. seq. (Maine Fraudulent transfer statute), hereby brings this action against Defendants Robert E. Bateman, Leslie A. Bateman and the Town of Sebago, Maine (collectively, the "Defendants"). The Trustee seeks to recover from the Defendants, for the benefit of the bankruptcy estate, real estate of the Debtors, or the value thereof, transferred to the Defendants. The initial alleged transfer was made pursuant to a real estate tax lien enforcement proceeding by the Town of Sebago. The Town of Sebago and the Debtors then purportedly transferred the same real estate by deeds to insiders of the Debtors, the Debtors' son, Robert E. Bateman and daughter-in-law, Leslie A. Bateman, (collectively, "Robert and Leslie").

1

In further support hereof, the Trustee alleges as follows:

**PARTIES**

1. Plaintiff is the duly-appointed Chapter 7 Trustee in this case with an address of Law Office of Joseph G. Butler 355 Providence Highway, Westwood, Massachusetts 02090.

2. Defendants, Robert E. Bateman and Leslie A. Bateman, are individuals who reside at 187 4th Avenue, Apartment 2, Brooklyn, New York 11217-5041. Robert and Leslie are, respectively, the son and daughter-in-law of the Debtors.

3. Defendant, the Town of Sebago, is a duly constituted municipality located in the State of Maine with an address of Town Clerk, 406 Bridgton Road Sebago, Maine 04029.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

5. This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2) (A), (H), and (O).

6. Venue in the District of Massachusetts is proper pursuant to 28 U.S.C. §1409.

**BACKGROUND**

7. On November 25, 1980, the Debtors purchased and took title, as joint tenants, to the real property located at 18 Quaker Camp Road, Sebago, Maine 04029 (the "Maine Property"). A true copy of the Deed transferring the Maine Property to the Debtors is attached hereto as **Exhibit A**.

8. From and after 2004, no mortgages encumbered the Maine Property.

9. On September 15, 2011, the Town of Sebago recorded with the Cumberland

County Registry of Deeds a tax lien certificate against the Maine Property in the amount of $18,998.79. The Debtor Katherine E. Bateman's name was not noted on the certificate. A copy of said certificate is attached hereto as **Exhibit B**.

10. On September 14, 2012, the Town of Sebago recorded with the Cumberland County Registry of Deeds a tax lien certificate against the Maine Property in the amount of $19,337.20. The Debtor Katherine E. Bateman's name was not noted on the certificate. A copy of said certificate is attached hereto as **Exhibit C**.

11. On September 20, 2013, the Town of Sebago recorded with the Cumberland County Registry of Deeds a tax lien certificate against the Maine Property in the amount of $18,294.13. The Debtor Katherine E. Bateman's name was not noted on the certificate. A copy of said certificate is attached hereto as **Exhibit D**.

12. On February 26, 2015, the Town of Sebago filed suit against the Debtors in Cumberland Superior Court (the "Superior Court Action") for equitable relief pursuant to 36 M.R.S.A. §946 and, in the alternative, for declaratory judgment regarding the tax lien certificates recorded in years 2011, 2012 and 2013. A copy of the docket for the Superior Court Action is attached hereto as **Exhibit E**.

13. On March 9, 2015, the Debtors filed an answer in the Superior Court Action alleging, inter alia, that there were "defects" in the notice to them regarding the tax liens. As of that date, the tax liens recorded against the Maine Property totaled only $56,630.12 and the Maine Property was assessed for tax purposes at a value of $1,358,610.00. The Maine Property is lakefront property on Sebago Lake.

14. On April 2, 2015, the Town of Sebago filed its *Plaintiff's Motion for Summary*

*Judgment with Incorporated Memorandum of Law* and other supporting affidavits and pleadings in the Superior Court Action. The Debtors did not oppose said motion.

15. On May 5, 2015, the Superior Court entered summary judgment in favor of the Town of Sebago in the Superior Court Action. A copy of the Order granting summary judgment in favor of the Town of Sebago is attached hereto as **Exhibit F**.

16. On May 13, 2015, the Debtors filed their *Motion to Reconsider the Superior Court Order* respecting the allowance of the motion for summary judgment, along with affidavits from both of the Debtors alleging that they never received the Town of Sebago's Motion for Summary Judgment.

17. On May 21, 2015, the Town of Sebago filed an opposition to the Debtors *Motion to Reconsider the Superior Court Order*. On June 15, 2015, the Debtors' *Motion to Reconsider the Superior Court Order* was denied.

18. On July 21, 2015, the Town of Sebago, Board of Selectmen issued Minutes which stated in relevant part that: "Jim Smith [the Town Manager] asked how the town should proceed after receiving four sealed bids for the [Maine] property and whether they should hire a broker or not." A copy of said Minutes are attached hereto as **Exhibit G**.

19. On July 23, 2015, the Town of Sebago recorded the Superior Court Order granting summary judgment in its favor with the Cumberland County Registry of Deeds.

20. On August 25, 2015, the Town of Sebago, Board of Selectmen issued Minutes which stated: "[Selectperson] Ann Farley made a motion to authorize the Town's Attorney to explore possible negotiated resolution in the dispute as related to the recently tax acquired [Maine Property.] It was seconded by [Selectperson] Tim Mayberry. Motion carried with [Selectperson] Jim Libby opposed." A copy of said Minutes are attached hereto as **Exhibit H**.

21. On September 1, 2015, the Town of Sebago, Board of Selectmen issued Minutes which stated: "The Board reconvened at 7:30 p.m. [Selectperson] Ann Farley made a motion to enter into an agreement with Robert Bateman and his wife [the son and daughter-in-law of the Debtors] allowing them to repurchase the [Maine Property] in the amount of $300,000.00. Sale needs to be completed within 30 days. It was seconded by [Selectman] Edythe Harnden. Motion carried." A copy of said Minutes are attached hereto **Exhibit I**.

22. At the time the Motion to enter into an agreement with Robert and Leslie to sell them the Maine Property for $300,000.00 was made, the Maine Property was assessed for tax purposes at a value of $1,358,610.00.

23. On November 3, 2015, the following documents were recorded at the Cumberland County Registry of Deeds, respecting the Maine Property, in the following order:

(i) Municipal Release Deed, dated October 28, 2015, from the Town of Sebago to Robert and Leslie referencing three tax liens in the amount of $18,998.79, $19,337.20 and $18,294.13 (total of $56,630.12). A copy of said Municipal Release Deed is attached hereto as **Exhibit J**.

(ii) Quitclaim Deed, dated September 25, 2015, from the Debtors to Robert and Leslie, a copy of which Quitclaim Deed is attached hereto as **Exhibit K**.

(iii) Mortgage, dated October 29, 2015, granted by Robert and Leslie to Cport Credit Union in the amount of $240,000.00, a copy of which mortgage is enclosed herewith as **Exhibit L**.

24. Upon information and belief, Robert and Leslie paid only $60,000.00 as a cash down payment for the Maine Property financing the balance of the purchase with a $240,000.00 first mortgage loan from CPort Credit Union.

25. Robert and Leslie are "insiders" of the Debtors pursuant to 11 U.S.C. § 101(31).

26. After Robert and Leslie acquired the Maine Property, it was re-assessed for

5

tax purposes by the Town of Sebago at a value of $1,140,696.00. A copy of a statement from the Deputy Clerk for the Town of Sebago, dated April 19, 2017, in this regard is attached hereto as **Exhibit M**.

27. Upon information and belief, under Maine law, assessments for tax purposes are required to be within 10% of fair market value.

28. On April 5, 2017, (the "Petition Date") the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§1101, et. seq.) (the "Bankruptcy Code").  The Debtor Thomas Bateman is an attorney.

*29.* On April 19, 2017, the Debtors filed with the Court their *Statement of Financial Affairs* [Docket No. 14]. In response to question no. 18: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" the Debtors' answered "no" and did not describe the real estate tax enforcement proceeding and alleged transfer of the Maine Property to the Town of Sebago or the transfer of the Maine Property to Robert and Leslie by the Debtors' Quitclaim Deed, dated September 25, 2015.

30. After they were questioned about said transfers by parties in interest in their bankruptcy case, the Debtors, on June 2, 2017, filed an amended *Statement of Financial Affairs* [Docket No. 34] in which they identified their transfer of the Maine Property to Robert and Leslie.

31. On February 5, 2018, the Debtors' Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.

32. On February 6, 2018, the Trustee was appointed.

33. Under Maine law, tax lien certificates must contain the name of the record owner

6

in order to be effective. In the event that real estate is owned by two record owners, both owners must be named in the tax lien certificates in order for them to be effective. *See, Town of Pownal v. Anderson* 728 A.2d 1254, 1258-59 (1999) (failure to include spouse/co-owner's name on the certificate of tax lien renders the lien void).

34. The tax lien certificates served by the Town of Sebago and recorded with the Cumberland County Registry of Deeds in 2011, 2012, and 2013 with respect to the Maine Property were all defective as they were addressed solely to Thomas R. Bateman rather than to both Thomas R. Bateman and Katherine E. Bateman, the record owners of the Maine Property.

35. The Town of Sebago admitted this error in a letter, dated November 6, 2014, from its counsel, Brian D. Willing to the Debtors. Pursuant to said letter, the Town of Sebago attempted to cure the defect in its tax lien certificates by delivering further notice to both Katherine and Thomas Bateman enclosing copies of said certificates. A copy of said letter is annexed hereto as **Exhibit N**.

36. Upon information and belief, thereafter, on February 26, 2015, the Town of Sebago commenced the Superior Court Action in an attempt to clear the cloud on title to the Maine Property that had arisen as a result of the defective tax lien certificates.

37. In the Superior Court Action, the Town of Sebago sought only to confirm that the admittedly defective statutory tax lien enforcement process was sufficient to transfer title to the Town of Sebago. In the Superior Court Action, the Town of Sebago did not seek to provide for any solicitation of bids or competitive bidding for the Maine Property.

38. The Town of Sebago at all relevant times had an alternative procedure available to it by which it could have sold the Maine Property at public sale. *See*, 36 M.R.S.A. § 941.

39. The earliest that the Maine Property could have been transferred to the *Town* of Sebago was on July 23, 2015, when the Town of Sebago recorded the Superior Court order granting summary judgment with the Cumberland County Registry of Deeds. *See* 36 M.R.S.A. § 946(2).

40. Notwithstanding the recording of said Order and the Town of Sebago's delivery of the above-described Municipal Release Deed to the Maine Property to Robert and Leslie, the Debtors also executed, delivered and recorded the above-described Quitclaim Deed to the Maine Property, dated September 25, 2015, to Robert and Leslie.

41. Whether transferred first to the Town of Sebago, by the recording of the summary judgment order and, thereafter, to Robert and Leslie by the Municipal Release Deed or directly to Robert and Leslie by the Quitclaim Deed from the Debtors, the Maine Property was transferred to the insider Defendants Robert and Leslie within the two-year period prior to the Petition Date.

42. To the extent that the Maine Property was transferred to the Town of Sebago, said property was transferred in satisfaction of approximately $56,630.12 in taxes at a time when the Maine Property was assessed at approximately $1,358,610.00.

43. At the time of the alleged transfer of the Maine Property to the Town of Sebago, the Debtors were insolvent or were rendered insolvent by said transfer.

44. At the time of the alleged transfer of the Maine Property to Robert and Leslie, the Debtors were insolvent or were rendered insolvent by said transfer.

45. Upon information and belief, the Debtors never listed the Maine Property with a broker for sale prior to the alleged transfer to the Town of Sebago.

46. Upon information and belief, the process by which the Town of Sebago allegedly

8

took title to the Maine Property involved no public auction or other competitive bidding process.

47. Upon information and belief, the Town of Sebago never retained an auctioneer or broker to assist the Town of Sebago in a sale of the Maine Property.

48. Upon information and belief, the Town of Sebago never advertised the Maine Property for sale in any publication of general circulation in the Sebago area or elsewhere.

49. Upon information and belief, at least four sealed bids to purchase the Maine Property were submitted to the Town of Sebago in 2015.

50. Upon information and belief, the Town of Sebago did not consider at least three of those bids and did not request any further bids or bidding for the Maine Property.

51. Upon information and belief, the Town of Sebago did not conduct a process of competitive bidding among the bidders who had submitted sealed bids for the Maine Property.

52. At his creditors meeting held on May 8, 2017, Thomas R. Bateman testified that the Maine Property was appraised for $1,800,000.00 in 2015.

53. Also, at his creditors meeting, in response to the question "why is there a deed from you to your son in the registry Mr. Bateman" he answered "Because, uh, negotiated with my son for him to purchase it back from the town."

**Count I-Avoidance of Fraudulent Transfer to the Town of Sebago
(11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) and 550)**

54. The Trustee repeats and realleges the allegations of the previous paragraphs as if fully restated herein.

55. On July 23, 2015, the Debtors' interest in the Maine Property was transferred to the Town of Sebago by recording of the summary judgment order during the two-year fraudulent transfer period (April 5, 2015-April 5, 2017) under 11 U.S.C §548(a)(1) (the "Sebago Transfer").

56. The Sebago Transfer was the result of a scheme by the Debtors, Robert and Leslie

9

and the Town of Sebago to allow the Maine Property to be acquired by the Town of Sebago for unpaid taxes so that the Maine Property and the substantial equity therein, could then be acquired by the insiders Robert and Leslie.

57. The Debtors' fraudulent intent is evidenced by their failure to attempt to sell the Maine Property at any time prior to or during the lengthy tax lien enforcement activities of the Town of Sebago. Such intent is further evidenced by their failure to defend in any meaningful way against the tax lien enforcement proceedings, especially where they had an obvious legal defense (that the tax liens were void) which was not raised in their pleadings at any time during said proceedings.

58. The Debtors' fraudulent intent is further evidenced by the Quitclaim Deed of the Maine Property, dated September 25, 2015, from the Debtors to Robert and Leslie, which Quitclaim Deed was not initially disclosed by the Debtors in their bankruptcy case.

59. Other badges of fraud are that: the Debtors' were insolvent at the time of the Sebago Transfer or became insolvent as a result of the Sebago Transfer; the Maine Property was transferred to insiders of the Debtors, Robert and Leslie; the Debtors' were defendants in litigation at or about the time of the Sebago Transfer; and the Maine Property was purportedly transferred to a lienor (Town of Sebago) who then transferred the Maine Property to insiders of the Debtors.

60. Accordingly, the Debtors, through their collusion with the Town of Sebago and Robert and Leslie, effectively made the Sebago Transfer with actual intent to hinder, delay, or defraud an entity to which the Debtors were or became indebted on or after the date the Sebago Transfer was made within the meaning of 11 U.S.C. §548(a)(1)(A).

61. Additionally, the Debtors received less than a reasonably equivalent value in

10

exchange for the Sebago Transfer and the Debtors: (i) were insolvent on the date of the Sebago Transfer, or became insolvent as a result of the Sebago Transfer; or (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was unreasonably small capital; or (iii) or intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured, all within the meaning of 11 U.S.C. §548(a)(1)(B).

62. Based upon the foregoing, the Sebago Transfer is avoidable under 11 U.S.C. §548(a)(1)(A) and/or §548(a)(1)(B) and, pursuant to 11 U.S.C. §550, the Town of Sebago owes the Debtors' bankruptcy estate the value of the Maine Property transferred, plus interest, and any further amount that this Court determines to have been fraudulently transferred or the Trustee is entitled to a reconveyance of the Maine Property to the Debtors' estate.

63. To the extent that Robert and Leslie are determined to be subsequent transferees of the initial transferee of the Maine Property, the Trustee may also recover the value of the Maine Property or the Maine Property from Robert and Leslie as they are, at best, immediate transferees who have not acted in good faith under 11 U.S.C. §550(b).

**Count II-Avoidance of Fraudulent Transfer to Town of Sebago**
**(11 U.S.C. §§ 544 and 550; and M.G.L. c. 109A §1, et seq. or 14 M.R.S.A. §3571, et. seq.)**

64. The Trustee repeats and realleges the allegations of the previous paragraphs as if fully restated herein.

65. The Sebago Transfer occurred during the four-year fraudulent transfer period (April 5, 2013–April 5, 2017) provided for by M.G.L. Chapter 109A and during the six-year fraudulent transfer period provided by 14 M.R.S.A. §3571, *et. seq.*

66. The Debtors, through their collusion with the Town of Sebago and

11

Robert and Leslie, effectively made the Sebago Transfer with the actual intent to hinder, delay, or defraud their creditors. Such intent is shown by, among other things, the badges of fraud and other evidence of fraud previously referred to in this Complaint. Thus, the Sebago Transfer is fraudulent under M.G.L. c. 109A, §5(a)(1) and/or 14 M.R.S.A. §3575.1A.

67. Additionally, the Debtors made the Sebago Transfer without receiving a reasonably equivalent value in exchange for the Sebago Transfer and: (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any assets remaining with the Debtors were unreasonably small in relation to the business or transaction; or (ii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts became due. The Sebago Transfer is fraudulent under M.G.L. c. 109A, §5(a)(2) and/or 14 M.R.S.A. §3575.1. B.

68. Additionally, the Debtors made the Sebago Transfer without receiving a reasonably equivalent value in exchange at a time when the Debtors were insolvent or became insolvent as a result of the Sebago Transfer. The Sebago Transfer is fraudulent under M.G.L. c. 109A, §6(a) and/or 14 M.R.S.A. §3576.1.

69. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of a debtor in property that is avoidable under applicable state law (in this case, M.G.L. c. 109A or 14 M.R.S.A. §3571, *et. seq*) or by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502.

70. There are creditors who hold unsecured claims against the Debtors including, without limitation, Samek & Kennedy and the IRS, that are allowable under §502 of the Bankruptcy Code, which claims existed as of and prior to the date of the Sebago Transfer and remained owed as of the Petition Date.

71. Based upon the foregoing, the Sebago Transfer constitutes a fraudulent transfer pursuant to M.G.L. c. 109A and/or 14 M.R.S.A. §3571, *et. seq.* which is avoidable by the Trustee pursuant to 11 U.S.C. §544(b). Pursuant to 11 U.S.C. §550, M.G.L. c. 109A §9 and 14 M.R.S.A. §3579, the Town of Sebago owes the Debtors' bankruptcy estate the value of the Maine Property transferred, plus interest thereon, and any further amount that this Court determines to have been fraudulently transferred or the Trustee is entitled to a reconveyance of the Maine Property to the Debtors' estate.

72. To the extent that Robert and Leslie are determined to be subsequent transferees of the initial transferee of the Maine Property, the Trustee may also recover the value of the Maine Property or the Maine Property from Robert and Leslie as they are, at best, immediate transferees who have not acted in good faith under 11 U.S.C. §550(b).

### Count III-Avoidance of Fraudulent Transfer to Robert and Leslie
### (11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) and 550)

73. The Trustee repeats and realleges the allegations of the previous paragraphs as if fully restated herein.

74. The Debtors' interest in the Maine Property was transferred to Robert and Leslie by the Quitclaim Deed, dated September 25, 2015, from the Debtors to Robert and Leslie and/or by the Municipal Release Deed, dated October 28, 2015, from the Town of Sebago (the "Robert and Leslie Transfer").

75. The Robert and Leslie Transfer was the result of a scheme by the Debtors, Robert and Leslie and the Town of Sebago to allow the Maine Property to be acquired by the Town of Sebago for unpaid taxes so that the Maine Property and the substantial equity therein, could then be acquired by the insiders Robert and Leslie.

76. The Debtors, through their collusion with the Town of Sebago and

13

Robert and Leslie, and then by way of the Quitclaim Deed, made the Robert and Leslie Transfer with the actual intent to hinder, delay, or defraud their creditors. Such intent is shown by, among other things, the badges of fraud and other evidence of fraud previously referred to in this Complaint.

77. Accordingly, the Robert and Leslie Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtors were or became indebted on or after the date the Sebago Transfer was made within the meaning of 11 U.S.C. §548(a)(1)(A).

78. Additionally, the Debtors received less than a reasonably equivalent value in exchange for the Robert and Leslie Transfer and the Debtors: (i) were insolvent on the date of the Robert and Leslie Transfer, or became insolvent as a result of the Robert and Leslie Transfer; or (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was unreasonably small capital; or (iii) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured, all within the meaning of 11 U.S.C. §548(a)(1)(B).

79. Based upon the foregoing, the Robert and Leslie Transfer is avoidable under 11 U.S.C. §548(a)(1)(A) and/or §548(a)(1)(B) and, pursuant to 11 U.S.C. §550, Robert and Leslie owe the Debtors' bankruptcy estate the value of the Maine Property transferred, plus interest, and any further amount that this Court determines to have been fraudulently transferred or the Trustee is entitled to a reconveyance of the Maine Property to the Debtors' estate.

80. To the extent that it is determined that the Sebago Transfer was the initial transfer by the Debtors of the Maine Property, the Trustee may also recover the value of the Maine Property or the Maine Property from Robert and Leslie as they are, at best, immediate transferees who have not acted in good faith under 11 U.S.C. §550(b). Alternatively, the Sebago Transfer and the Robert

14

and Leslie Transfer should be collapsed into and considered a single transfer conducted pursuant to a fraudulent scheme.

### Count IV-Avoidance of Fraudulent Transfer to Robert and Leslie
### (11 U.S.C. §§ 544 and 550; and M.G.L. c. 109A §1, et seq. or 14 M.R.S.A. §3571, et. seq.)

81. The Trustee repeats and realleges the allegations of the previous paragraphs as if fully restated herein.

82. The Robert and Leslie Transfer was the result of a scheme by the Debtors, Robert and Leslie and the Town of Sebago to allow the Maine Property to be acquired by the Town of Sebago for unpaid taxes so that the Maine Property and the substantial equity therein could then be acquired by the insiders Robert and Leslie.

83. The Debtors, through their collusion with the Town of Sebago and Robert and Leslie, and then by way of the Quitclaim Deed, made the Robert and Leslie Transfer with the actual intent to hinder, delay, or defraud their creditors. Such intent is shown by, among other things, the badges of fraud and other evidence of fraud previously referred to in this Complaint.

84. The Robert and Leslie Transfer occurred during the four-year fraudulent transfer period (April 5, 2013–April 5, 2017) provided for by M.G.L. Chapter 109A and during the six-year fraudulent transfer period provided by 14 M.R.S.A. §3571, *et. seq*.

85. The Debtors, through their inaction, made the Robert and Leslie Transfer with the actual intent to hinder, delay, or defraud their creditors. Such intent is shown by, among other things, the badges of fraud and other evidence of fraud previously referred to in this Complaint. Thus, the Robert and Leslie Transfer is fraudulent under M.G.L. c. 109A, §5(a)(1) and/or 14 M.R.S.A. §3575.1A.

86. Additionally, the Debtors made the Robert and Leslie Transfer without receiving a

15

reasonably equivalent value in exchange for the Robert and Leslie Transfer and: (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any assets remaining with the Debtors were unreasonably small in relation to the business or transaction; or (ii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts became due.  The Robert and Leslie Transfer is fraudulent under M.G.L. c. 109A, §5(a)(2) and/or 14 M.R.S.A. §3575.1. B.

87. Additionally, the Debtors made the Robert and Leslie Transfer without receiving a reasonably equivalent value in exchange at a time when the Debtors were insolvent or became insolvent as a result of the Robert and Leslie Transfer. The Robert and Leslie Transfer is fraudulent under M.G.L. c. 109A, §6(a) and/or 14 M.R.S.A. §3576.1.

88. Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of a debtor in property that is avoidable under applicable state law (in this case, M.G.L. c. 109A or 14 M.R.S.A. §3571, *et. seq*) or by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502.

89. There are creditors who hold unsecured claims against the Debtors including, without limitation, Samek & Kennedy and the IRS, that are allowable under §502 of the Bankruptcy Code which claims existed as of and prior to the date of the Robert and Leslie Transfer and remained owed as of the Petition Date.

90. Based upon the foregoing, the Robert and Leslie Transfer constitute a fraudulent transfer pursuant to M.G.L. c. 109A and/or 14 M.R.S.A. §3571, *et. seq*. which is avoidable by the Trustee pursuant to 11 U.S.C. §544(b). Pursuant to 11 U.S.C. §550, M.G.L. c. 109A §9 and 14 M.R.S.A. §3579, Robert and Leslie owe the Debtors' bankruptcy estate the value of the Maine Property transferred, plus interest thereon, and any further amount that this Court determines to

have been fraudulently transferred or the Trustee is entitled to a reconveyance of the Maine Property to the Debtors' estate.

91. To the extent that Robert and Leslie are determined to be subsequent transferees of the initial transferee of the Maine Property, the Trustee may also recover the value of the Maine Property or the Maine Property from Robert and Leslie as they are, at best, immediate transferees who have not acted in good faith under 11 U.S.C. §550(b).

### Count V-Request for Injunctive Relief
### Pursuant to 11 U.S.C. §105(a) and Bankruptcy Rule 7065

92. The Trustee repeats and realleges the allegations of previous paragraphs as if fully set forth herein.

93. A high probability exists that the Trustee will succeed on the merits of this adversary proceeding. Other than the Maine Property, the Trustee is unaware of any other assets of the Debtors that would be available to satisfy a judgment.

94. The Debtors' estate will suffer irreparable harm absent the grant of a preliminary injunction during the pendency of this matter that enjoins Robert and Lesley from directly or indirectly, transferring, encumbering, mortgaging, pledging, hypothecating, secreting, alienating, assigning or otherwise disposing of or lessening the value of the Maine Property.

95. The balance of equities weighs in favor of granting the preliminary injunction requested herein.

96. The granting of the preliminary injunction requested herein is consistent with the public interest.

97. Additionally, pursuant to 11 U.S.C. §105(a), this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

98. Pursuant to §105(a) and Bankruptcy Rule 7065 and Rule 65 F.R. Civ. P. and, based upon the forgoing allegations, the Trustee is entitled to a preliminary injunction enjoining and restraining the Defendants, Robert E. Bateman and Leslie A. Bateman, their agents, attorneys, employees, assignees, pledgees, nominees, successors and other representatives, from, directly or indirectly, transferring, encumbering, mortgaging, pledging, hypothecating, secreting, alienating, assigning or otherwise disposing of or lessening the value of the Maine Property, pending further order of the Court. A form of preliminary injunction proposed by the Trustee is attached to the *Plaintiff's Motion for Preliminary Injunction* filed herewith.

99. The Trustee further seeks, after trial, the entry of an order of this Court, directing that the Maine Property or its value be turned over to the Trustee to the extent necessary to satisfy any judgment in favor of the Trustee.

## Reservation of Rights

100. The Trustee reserves the right to bring additional claims against the Defendants and to supplement and amend the allegations of this Complaint. Nothing contained herein shall be deemed a waiver of any rights or causes of action that the Trustee may have against any of the Defendants.

WHEREFORE, the Trustee prays that this Court: (i) forthwith enter a preliminary injunction against the Defendants Robert E. Bateman and Leslie A. Bateman pursuant to Count V of this Complaint in the proposed form attached to the *Plaintiff's Motion for Preliminary Injunction* filed herewith; (ii) enter judgment in the Trustee's favor on Counts I through IV of this Complaint and order that each of the Defendants owes the Debtors' bankruptcy estate the value of the Maine Property transferred plus interest and any further amount that this Court determines to

have been fraudulently transferred or directing the Defendants to reconvey the Maine Property to the Trustee and/or to the Debtors' estate; and (iii) grant such other and further relief as this Court deems just and appropriate.

_____
Joseph G. Butler
Chapter 7 Trustee of
Thomas R. Bateman and
Katherine E. Bateman

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

On this 31st day of December 2018, before me, the undersigned Notary Public, personally appeared the above-named Joseph G. Butler, who proved to me by satisfactory evidence of identification, being (check whichever applies): (__) driver's license or other state or federal governmental document bearing a photographic image; (__) oath or affirmation of a credible witness known to me who knows the above signatory, (__) or my own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by him in his capacity as Chapter 7 Trustee of Thomas R. Bateman and Katherine E. Bateman and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge, information and belief,

_____, Notary Public
My Commission Expires: _____

Dated: December 31, 2018

Respectfully submitted,
Joseph G. Butler, Chapter 7 Trustee of
Thomas R. Bateman and Katherine E. Bateman
By his attorneys,

/s/ James M. Liston
James M. Liston (BBO # 301750)
Jonathan M. Hixon (BBO # 692420)
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel. (617) 422-0200
jml@bostonbusinesslaw.com
jmh@bostonbusinesslaw.com